The Attorney General has considered your request for an opinion on the questions you submitted which ask, in effect, the following: 1) Are Indian tribal courts of competent jurisdiction for the purpose of issuing amended certificates of birth upon receipt of a decree of adoption rendered by such a court? 2) Are such courts of competent jurisdiction for the purpose of releasing vital statistics records required by statute to be confidential ? 3) How may the State Registrar of Vital Statistics determine whether an Indian tribal court is in fact a court of competent jurisdiction for the above purposes? The issuance of new certificates of birth by the Vital Statistics division of the State Department of Health is governed by two statutes. The first is 10 O.S. 60.18 [10-60.18] (1971) which directs the State Registrar to prepare a supplementary certificate of birth "upon receipt of a certified copy of an order or decree of adoption." This provision is contained in the Uniform Adoption Act, 10 O.S. 60.1 [10-60.1] et seq. (1971), which specifies the procedures for adoption of children in this state. The court referred to in 10 O.S. 60.18 [10-60.18] (1971) is the Oklahoma court having jurisdiction over adoption proceedings. The second statute is 63 O.S. 1-316 [63-1-316] (1971) which provides for the establishment of a new certificate of birth upon receipt of "an adoption certificate as provided in the Uniform Adoption Act, or a certified copy of the decree of adoption together with the information necessary to identify the original certificate and to establish a new certificate of birth. . ." There is no specification in the statutes concerning vital statistics, 63 O.S. 1-301 [63-1-301] et seq. (1971), to a particular court or jurisdiction. Pursuant to 63 O.S. 1-316 [63-1-316], a new certificate is issued on receipt of a certified copy of a valid decree of adoption. The question presented is whether a certified copy of a decree of adoption issued by an Indian tribal court is a decree upon which a new certificate of birth may be issued. Whether a particular state or a tribe situated within that state has jurisdiction over a particular adoption proceeding is a question which can be answered only with reference to the particular tribe, its status under federal law, and the assumption or retrocession of state jurisdiction. There are tribes which has jurisdiction to issue decrees of adoption, but there are many tribes at this time do not. The United States Supreme Court has addressed the issue of the jurisdiction of tribal courts to issue decrees of adoption. In Fisher v. District Court of the Sixteenth Judicial District of Montana, 424 U.S. 382, 47 L.Ed.2d 106, 96 S Ct. 943 (1976) the Court considered conflicting claims of jurisdiction over adoption proceedings among tribal members. Both the State of Montana and the Northern Cheyenne Tribe asserted jurisdiction. The Court held that the Tribe had jurisdiction to the exclusion of the state, where the adoption concerned members of the tribe, the tribe's right of self government had been consistently protected by federal statute, state jurisdiction would interfere with tribal self-government and was not sanctioned by federal law, and the adoption proceeding was properly characterized as litigation arising on the tribe's reservation. The Court specifically noted in footnote 14, p. 389, that in adoption proceedings it is appropriate to predicate jurisdiction on the residence of the parties rather than the location of other incidents such as the adoptee's place of birth, or the location where his parents were married or divorced. I note that the decree which gave rise to this request was issued by the Sisseton-Wapheton Sioux Tribe of the Lake Traverse Reservation in South Dakota. In DeCoteau v. District County Court for the Tenth Judicial District, 420 U.S. 425,43 L.Ed.2d 300, 95 S.Ct. 1082, reh den 421 U.S. 939,44 L.Ed.2d 95, 95 S.Ct. 1667 (1975) the Supreme Court noted that while the Reservation had been partially terminated, exclusive tribal and federal jurisdiction extended over all the allotted lands in the former reservation area. While holding that the state court had jurisdiction, as most of the incidents upon which the child custody order was based occurred off the allotted lands, the opinion did note the tribe had jurisdiction over child custody proceedings where the significant incidents occurred on the allotments. The Sisseton-Wapheton Sioux Tribe does have jurisdiction over adoption proceedings provided the significant contacts occurred within its territorial jurisdiction. As a general principle of law, duly authenticated foreign judgments are entitled to a presumption that the court had subject matter and personal jurisdiction, absent proof or a contrary showing by the record, Simms v. Hobbs, 411 P.2d 503
(Okl. 1966). For the purpose of issuing an amended certificate of birth, which is a ministerial function, recognition could be accorded the decree of the Sisseton-Wapheton Tribal Court. That decree is entitled to recognition at least under the theory of comity. As expressed in Hilton v. Guyot, 159 U.S. 113, 40 L.Ed. 95,16 S.Ct. 139 (1895) comity may be afforded foreign decrees if the court had subject matter and personal jurisdiction, the decree was not obtained fraudulently, the legal system whose decree is to be recognized afforded basic due process protection, and the decree does not contravene public policy of the recognizing jurisdiction. Those criteria are presumptively met by the decree of the Sisseton-Wapheton Tribal Court and the Registrar may issue an amended certificate of birth based on that decree. As noted in the above cited cases, some tribal courts have jurisdiction to issue decrees of adoption. The determination as to whether tribal courts are courts of competent jurisdiction for the purpose of the State Registrar issuing amended certificates of birth must therefore be resolved on a tribe by tribe basis. As the determination of whether a particular tribe has subject matter and personal jurisdiction is a question of fact your request cannot be answered either affirmatively or negatively. Your second question concerns the jurisdiction of an Indian tribal court to order the release of records required to be kept confidential. The statutes specify a certain degree of confidentiality of vital statistic records. Title 10 O.S. 60.18 [10-60.18] (1971) provides for the sealing of original birth records on the issuance of a supplemental certificate. That section specifies that "Such sealed documents may be opened by the state registrar only upon the demand of the adopted person, if of legal age, or adoptive parents, by an order of the court."' More explicit and restrictive language is found in 63 O.S. 1-316 [63-1-316](b) (1971) which provides: (b) When a new certificate of birth is established, the actual place and date of birth shall be shown. It shall be substituted for the original certificate of birth: (1) Thereafter, the original certificate and the evidence of adoption, paternity, or legitimation shall not be subject to inspection except upon order of a court of competent jurisdiction. (2) Upon receipt of notice of annulment of adoption, the original certificate of birth shall be restored to its place in the files and the new certificate and evidence shall not be subject to inspection except upon order of a court of competent jurisdiction. Both of these sections specifically deal with supplemental or new birth certificates. The general confidentiality of all vital statistic records is expressed in 63 O.S. 1-323 [63-1-323] (1975), which prohibits any person from disclosing to another information in such records unless such disclosure is to the person himself, in his interest, or as ordered by a court of competent jurisdiction. Any order directing disclosure of confidential records maintained in this state would of necessity be directed to a state officer. A decree of a court in another state would be rendered without jurisdiction over the res (here, the records) or jurisdiction over the officer. As noted in Ex Parte Davis,91 P.2d 799, 66 Okl. Cr. 291 (1939), "A Court of competent jurisdiction is one having power and authority of law at the time of acting to do the particular act, and jurisdiction of the person and of the subject mater is not alone conclusive, but jurisdiction of the court to render the particular judgment or issue the process is a legitimate subject of inquiry." An Ex Parte order to the Commissioner of Health or the State Registrar concerning the release of records kept in this state, when issued by an Indian tribal court would be an order issued without rem or personam jurisdiction. Such lack of jurisdiction is open to inquiry by this state, Allen v. Allen, 209 P.2d 172,201 Okl. 442 (1948), appeal dismissed and cert. den.336 U.S. 956, 93 L.Ed. 1110, 69 S.Ct. 891. The absence of such jurisdiction would preclude that court from being a "court of competent jurisdiction" for the purpose of releasing vital statistics records held by this state. As 63 O.S. 1-316 [63-1-316] (1971) requires an order of a court of competent jurisdiction before such records can be released, the State Registrar of Vital Statistics may not release confidential vital statistics records pursuant to an order of an Indian Tribal Court. In light of the foregoing, your third question is in essence how the Registrar may determine whether a particular tribal court has jurisdiction to issue a decree of adoption. There is currently available no single reference for such determination. Whether a particular tribe has subject matter jurisdiction over adoption proceedings depends largely on whether the state wherein the tribe is situated has assumed such jurisdiction pursuant to federal statute, and whether it has retained such jurisdiction. Examination of the United States Code reveals some jurisdictional transfers. Title 25 U.S.C. § 232, 233 vests jurisdiction in the State of New York over resident Indians; 28 U.S.C. § 1360 vests civil jurisdiction over Indians within the state in Alaska, California, Minnesota, Nebraska, Oregon, and Wisconsin, excepting the Red Lake and Warm Reservations in Minnesota and Oregon, respectively. In the statutes at large, 54 Stat. 249
grants jurisdiction to North Dakota, and 62 Stat. 1161
grants jurisdiction to Iowa. These citations do not exhaust the list, as the statutes concerning particular tribes sometimes vest jurisdiction in the state, such as26 Stat. 88 concerning the Cheyenne-Arapahoe in Oklahoma. Eight states, Arizona, Montana, New Mexico, North Dakota, Oklahoma, South Dakota, and Washington were required in their respective enabling acts to disclaim jurisdiction over Indian country. However, in 1953 Congress passed a statute authorizing states to assume jurisdiction, 18 U.S.C. § 1162, which included the above eight states. Subsequent amendment of 18 U.S.C. § 1162 required consent of the tribe to state assumption of jurisdiction and also authorized retrocession of jurisdiction assumed by the states to the tribes. Reference must therefore be made to state laws enacted pursuant to this statute as amended. There are available reference materials which may assist in tracking relevant statutes. The U.S. Department of the Interior publication Federal Indian Law (1958) and M. Price, Law and the American Indian (1973) are useful in this regard. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: While some tribes have jurisdiction to enter valid adoption decrees entitled to recognition by the Commissioners of Health for the purpose of issuing amended certificates of birth, numerous tribes do not. The determination involves questions of fact and law rendering impossible an affirmative or negative answer to your question. As to your second question, it is the opinion of the Attorney General that Indian tribal courts are not courts of competent jurisdiction for the purpose of ordering the release of vital statistics records required by 10 O.S. 60.18 [10-60.18] (1971) and 63 O.S. 1-316 [63-1-316] (1971) to be maintained as confidential. Determination of the jurisdiction of particular tribal courts can be made by reference to the federal statutes and the laws of the state where a particular tribe is situated. (JOHN GREGORY THOMAS) (ksg)